J-S13018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID MICHAEL BERENATO | : | |
| | : | |
| Appellant | : | No. 703 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 23, 2024
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000620-2023

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: JUNE 25, 2025**

David Michael Berenato[1] appeals *pro se* from the judgment of sentence entered after he was convicted of violating the Uniform Firearms Act and the Vehicle Code.[2] Berenato presents numerous challenges to the validity of his convictions and his sentence. We affirm.

Berenato was charged with the above crimes based on an incident on May 19, 2022. He appeared *pro se* for a jury trial. The trial court recounted the facts as follows:

---

[1] The appellant in this matter generally styles his name as ~david-michael. In the trial court, he disputed that he was the same "David Michael Berenato" who was being prosecuted. He does not challenge his identity on appeal. For clarity, we refer to him as Berenato throughout this decision.

[2] 18 Pa.C.S. § 6106(a)(1) (firearms not to be carried without a license), and 75 Pa.C.S. §§ 7122(3) (altered, forged or counterfeit documents and plates), 1786(f) (operation of motor vehicle without required financial responsibility), 1543(a) (driving under suspension), 1301(a) (driving unregistered vehicle).

On May 19, 2022 at approximately 2:08 p.m., Pennsylvania State Police Trooper Scott Dojka was patrolling Interstate 83 in the area of Lowther Street in Lemoyne Borough, Cumberland County. He observed a disabled Ford Expedition with an attached trailer on Lowther Street, blocking traffic. Trooper Dojka made contact with the driver, determined that "everything was okay," and called for a Motor Carrier Safety Assistance Program (MCSAP) Officer to respond to the scene. The MCSAP Officer that responded was Corporal Chad Ronk.

Corporal Ronk determined that the vehicle in question was, in fact, a commercial vehicle, so he began an investigation. He assessed the scene, collected information from the driver, and tried to determine the source of the problem in order to safely remove the vehicle from the roadway. When Corporal Ronk asked the driver for his driver's license, registration, and insurance, the driver handed over documents to him that were not consistent with documents issued by the Department of Transportation. The documents contained [Berenato's] photograph, several seals, and the following text:

State National or Pennsylvania – all rights reserved
:NON-U.S. PERSON:
NON-COMBATANT/PEACEFUL SOUL:
Identity; :~david-michael.
Nation- republic of Pennsylvania
Title- ultimate beneficial owner
Sending State- ~frances-grace.
Live zygote event of the
1965th of the 59th day;
a suveran living soul
International Customs Number
RB 002 593 880 US

from the desk of the office of the u.b.o.
RECORD OF IDENTITY
:under the universal law of the divine creator:
NON-U.S. PERSON
PEACEFUL-SOUL/NON-COMBATANT
Identity-~david-michael;
~crown and beneficiary of
The Cestui Qui Vie Trust;
status- ~private banker;
sending nation- ~frances-grace;
live life zygote event of the

> 1965th year, on the 28th day
> INTERNATIONAL-CUSTOMS-NUMBER
> RB 002593880 US
> Diplomat
> a suveran living soul
> foreign Dignitary

[Berenato] stated that these documents were sufficient to show he was privileged to operate a motor vehicle. Corporal Ronk then continued to examine the vehicle. He discovered that the vehicle appeared to be overweight and was "heavy in the rear axle." He noted that the vehicle had what he believed to be a license plate on the rear of the vehicle and the trailer, and on the front of the vehicle, there was a tag that was consistent with the purported identification documents [Berenato] had given to Corporal Ronk. The tag stated

> The Republic for the united States of North America
> Environmental Court for the Environmental
> District of the United States
> ENVIRONMENTAL INVESTIGATIONS
> PUBLIC LAW 92-500 RB 002 593 845 US

The license plates on the rear of the vehicle and the trailer appeared to be registered with the State of Delaware. Upon closer inspection, however, Corporal Ronk discovered that the license plates were just pieces of sheet metal with a sticker on them, not embossed as would be typical of a license plate. Corporal Ronk ran the tag numbers and the numbers came back registered to two different companies in the State of Delaware. After consulting with the owners of the businesses, Corporal Ronk ascertained that [Berenato] was not associated with either business. Both business owners indicated that they had received charges for tolls incurred by [Berenato]. Corporal Ronk subsequently checked the Vehicle Identification Number (VIN) which showed that [Berenato] was the registered owner of the vehicle.

Corporal Ronk continued his investigation of the vehicle, when [Berenato] informed him that he had a firearm in the vehicle. The firearm was located in the front passenger area of the vehicle, easily accessible to [Berenato]. The firearm was loaded. [Berenato] relinquished the firearm to Corporal Ronk, who placed it in his patrol vehicle. [Berenato] informed Corporal Ronk that he was traveling from Folcroft, Delaware to Long Pond,

Pennsylvania to attend a "gun show." Corporal Ronk was then joined by Trooper Joseph Manning.

Trooper Manning secured the firearm, unloaded it, separated it from the magazine, and prepared it for storage as evidence. After the firearm was secured, Trooper Manning performed a database search to determine the status of [Berenato's] driver's license and the vehicle's registration and insurance status. Trooper Manning performed a search using the [VIN] and was able to locate [Berenato's] driving record through PennDOT databases, which showed that [Berenato's] driver's license was suspended. The vehicle did not have valid registration or insurance.

Trooper Manning then continued his search to determine whether [Berenato] possessed a valid license to carry a firearm. [Berenato] did not have a valid concealed-carry license.

Trial Court Opinion, 12/17/24, at 1–5 (citations omitted).

The trial court instructed the jury on constructive possession but did not instruct the jury to determine whether Berenato was eligible for a carry permit. The jury found Berenato guilty under subsections 6106(a)(1) (firearms not to be carried without a license), and 7122(3) (altered, forged or counterfeit documents and plates). The trial court found Berenato guilty of the remaining summary offenses.

On April 23, 2024, the trial court sentenced Berenato to one to three years of incarceration for the firearms offense, as well as a concurrent term of three to twelve months of incarceration for the registration plate offense. Berenato mailed post-sentence motions to the trial court; the trial court received them on May 3, 2024. The trial court scheduled a hearing on the motions for June 11, 2024.

On May 17, 2024, Berenato filed a notice of appeal, prior to the trial court hearing or ruling on his post-sentence motions. The trial court thus determined that Berenato had deprived the court of jurisdiction to rule on his post-sentence motions. This Court remanded for the trial court to determine whether Berenato was eligible for appointed counsel and whether Berenato wished to remain *pro se*. The trial court found that Berenato was eligible for appointed counsel yet continued to refuse it. Berenato and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[3]

Berenato presents four groups of issues for review, which we address in the order he briefs: (1) issues related to Section 6106(a)(1) of the Crimes Code (firearms not to be carried without a license), (2) sentencing issues, (3) issues related to Section 7122(3) of the Vehicle Code (altered, forged or counterfeit documents and plates), and (4) jury instruction issues.

## Issues Related to 18 Pa.C.S. § 6106(a)(1)

Berenato first challenges the statutory subsection defining his firearm conviction and the application of that law to his case. Berenato was convicted under subsection 6106(a)(1) of the statute, graded as a felony of the third degree:

> § 6106. Firearms not to be carried without a license.
>
> (a) Offense defined.--

---

[3] The trial court did not order Berenato to file a concise statement of errors complained of on appeal. The certified record contains three distinct concise statements from Berenato.

> (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.
>
> (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S. § 6106(a).

On appeal, Berenato argues that the statute is "facially unconstitutional" against the Second Amendment to the United States Constitution. He cites *Range v. Attorney General U.S.*, 69 F.4th 96 (3d Cir. 2023) (*en banc*), *cert. granted, judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024). *See also Range v. Attorney General United States*, 124 F.4th 218 (3d Cir. 2024) (*en banc*) (holding on remand that the federal felon-in-possession law violated the Second Amendment as applied to a man who made false statements to obtain food stamps, *see* 62 P.S. § 481(a)). He advances policy considerations, contending that there is no rational basis for a felony of the third degree in addition to other laws establishing a felony of the first degree and a misdemeanor of the first degree for greater or lesser conduct, respectively. *Cf.* 18 Pa.C.S. § 6105(a)(1), (a.1)(1.1) (defining and grading the offense of persons not to possess firearms).

Berenato further challenges the sufficiency of the evidence to prove that he "carried" the firearm in a vehicle. He observes that he had the gun in a

zippered bag in the back of his truck, which he asserts was at most a "de minimis" violation of the law.

We address Berenato's sufficiency challenge first. **Commonwealth v. Collins**, 286 A.3d 767, 773 (Pa. Super. 2022). To review the sufficiency of the evidence, we must determine whether, considering all the evidence from trial in a light most favorable to the Commonwealth as verdict winner, there was sufficient evidence for the jury to find every element of the crime beyond a reasonable doubt. **Commonwealth v. Mead**, 326 A.3d 1006, 1012 (Pa. Super. 2024).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Id.* (quoting **Commonwealth v. Antidormi**, 84 A.3d 736, 756 (Pa. Super. 2014)).

Under the statute Berenato was convicted of violating, a person commits a crime if he "intentionally, knowingly, or recklessly carries a firearm in a vehicle . . . without a valid and lawfully issued license." *Id.*; *see* 18 Pa.C.S. § 6106(a)(1). Contrary to Berenato's argument, the Commonwealth can prove that a person carried a firearm in a vehicle if the person drove a car with a firearm in the car. Evidence is sufficient if it establishes that the person

was either holding the firearm (physical possession) or had "conscious dominion" over the firearm (constructive possession). *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citing *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012)). That is, a jury can find that a driver carried a firearm in a vehicle if he had both "the power to control" the firearm "and the intent to exercise that control." *Id.* For example, evidence was sufficient under subsection 6106(a)(1) where police found a handgun between the center console and the passenger seat of a car that a defendant was driving. *Id.* at 821; *accord Commonwealth v. Parker*, 847 A.2d 745, 751–52 (Pa. Super. 2004).

Here, the evidence was sufficient to prove that Berenato possessed, and therefore carried, the gun in his vehicle. Berenato was the driver and only occupant of the car. He informed police about the gun and said it was his. The jury could determine from this that Berenato had the power to control the gun and the intent to exercise that control. We reject Berenato's portrayal of his infraction as "de minimis"; his conduct was not a petty infraction and fell within the purpose of the criminal law. *See Commonwealth v. Matty*, 619 A.2d 1383, 1387–88 (Pa. Super. 1993) (applying 18 Pa.C.S. § 312). Thus, Berenato's sufficiency challenge fails.

Turning to Berenato's constitutional challenge to subsection 6106(a)(1), our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. McCormick*, 323 A.3d 1271, 1273 (Pa. Super. 2024).

> A statute is presumptively constitutional and it will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights. The presumption of constitutionality is strong, and the challenger bears a heavy burden to prove otherwise. We may accordingly strike down a statute as unconstitutional only if the challenger carries the burden of proving that it clearly, palpably, and plainly violates the federal or state constitution.

*Id.* (quotations, brackets, and citations omitted).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. This Court recently held that Pennsylvania's licensing statute does not violate the Constitution. *Mead*, 326 A.3d at 1015 (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 79–80 (2022) (Kavanaugh, J., concurring)). We abide by this holding.

We further reject Berenato's argument that subsection 6106(a)(1) is unconstitutional because Pennsylvania also criminalizes other conduct. Berenato does not explain how the legislature's choice to prohibit certain persons from possessing firearms at all would invalidate the statute that prohibits an unlicensed person from carrying a firearm in a vehicle or concealed. For this reason, Berenato's citation to *Range*, concerning the federal statute analogous to section 6105, is inapposite. Likewise, Berenato does not explain how the legislative determination to grade the section 6106 offense based on the person's eligibility for licensure somehow affronts the Second Amendment. Compare *Commonwealth v. Scarborough*, 89 A.3d

679, 684–88 (Pa. Super. 2014), which held that the grading of the offense in Philadelphia, effectively always a felony, was permissible. Berenato's constitutional challenge to subsection 6106(a)(1) fails.

**Sentencing Issues**

Berenato asserts that his sentence is excessive, in violation of federal and state constitutional provisions. *See* U.S. Const. amend. VIII; Pa. Const. art. I, § 13. He argues that his charges were distorted to result in a total term of three years of imprisonment, which is disproportionate to his conduct.

Courts assess three factors to determine whether a sentence is grossly disproportionate to the crime and thus unconstitutional under both charters: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Commonwealth v. Lankford*, 164 A.3d 1250, 1252 (Pa. Super. 2017) (quoting *Commonwealth v. Spells*, 612 A.2d 458, 462 (Pa. Super. 1992) (*en banc*)).

Here, the trial court observed that Berenato's crimes were of a greater magnitude than Berenato made them out to be, given the statutory purpose. Furthermore, Berenato's criminal history was significant. The trial court finally **agreed with Berenato that his crimes were non-violent, and it therefore imposed a sentence at the bottom of the mitigated range** for

the felony firearms violation.[4]  Given these considerations, we agree with the trial court that Berenato's aggregate one-to-three-year sentence does not violate the Eighth Amendment or Article I, Section 13.  Berenato's sentencing issue fails.

### Issues Related to 75 Pa.C.S. § 7122(3)

Berenato argues that he did not violate the following statute because his (false) Delaware license plates were not issued by the Pennsylvania Department of Transportation.

> **Altered, forged or counterfeit documents and plates.**
>
> A person is guilty of a misdemeanor of the first degree if the person, with fraudulent intent:
>
> \*      \*      \*
>
> has possession of, sells or attempts to sell, uses or displays a certificate of title, registration card or plate, driver's license, inspection certificate proof of financial responsibility or any other document issued by the department, knowing it to have been altered, forged or counterfeited[.]

75 Pa.C.S. § 7122(3).

This is an issue of statutory interpretation, for which "our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Watts***, 283 A.3d 1252, 1256 (Pa. Super. 2022) (quoting ***Commonwealth v.***

---

[4] Berenato states his one-to-three-year term was the "maximum aggregated range" for his firearm offense.  Not so.  The "numbers used for the ranges of the sentence recommendations suggest months of minimum confinement," not maximum terms.  204 Pa.Code § 303.9(e).  The applicable standard range of the guidelines was 24 to 36 months, and the mitigated range was 12 months.  The trial court thus imposed a mitigated-range sentence.

*Torres–Kuilan*, 156 A.3d 1229, 1231 (Pa. Super. 2017)). The Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, "provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intent of the General Assembly." *Id.* In general, the best indication of the legislature's intent is the plain language of a statute. *Id.* We look beyond plain statutory text only in cases of ambiguity or absurd, impossible, or unreasonable results. *Id.*

Resolving this issue depends on whether the catchall phrase "any other document issued by the department" limits the scope of the enumerated item, "registration . . . plate," to include only a plate issued by the department. We conclude it does not. True, we generally construe catchall provisions based on the nature of the items listed **before** them. 1 Pa.C.S. § 1903(b) ("General words shall be construed to take their meanings and be restricted by preceding particular words."); *see, e.g.*, *Commonwealth v. Scott*, 176 A.3d 283, 288 (Pa. Super. 2017) (applying the *ejusdem generis* doctrine). However, the Statutory Construction Act does not provide for the reverse rule. Notably, "if one or more of the enumerated items in the list could not possibly be a subset of the catch-all, then the argument that one or more other items in the list should be limited to the catch-all loses its force." Jay Wexler, *Fun with Reverse* Ejusdem Generis, 105 Minn. L. Rev. 1, 21 (2020) (citing *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 460 (S.D.N.Y. 2015)). It is unclear whether a registration plate is a "document," even if some plates are "issued by the department." We thus decline to "give[]

undue weight to the catchall provision" by limiting the scope of an otherwise unambiguous term in subsection 7122(3). The statute therefore applies to Berenato's registration plates and restricts his conduct; thus, his statutory issue fails.

**Jury Instruction Issues**

Finally, Berenato argues the trial court erroneously charged the jury on the firearm offense, subsection 6106(a)(1). First, he states that the jury was not instructed to find eligibility for a carry permit, so he would be subject to the lesser offense at subsection 6106(a)(2). Second, he states that the trial court improperly described "carrying" a firearm.

This court reviews jury instructions to determine whether the trial court abused its discretion. **Commonwealth v. Baker**, 963 A.2d 495, 507 (Pa. Super. 2008).

> When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

**Id.** (quoting **Commonwealth v. Jones**, 954 A.2d 1194, 1198 (Pa. Super. 2008)).

We discern no abuse of discretion with the trial court's instructions. The licensure language of subsection 6106(a)(2) "sets forth a grading/sentencing provision, and not an additional element of the felony offense set forth in

- 13 -

subsection (a)(1) or an affirmative defense." ***Commonwealth v. Bavusa***, 832 A.2d 1042, 1056 (Pa. 2003). "Whether the offense should be graded as a felony or a misdemeanor is a matter to be decided at sentencing." ***Id.*** Furthermore, as described above, "carrying" a firearm in a car includes the doctrine of constructive possession. ***Hopkins***, 67 A.3d at 821. Because the trial court charged the jury accurately, Berenato's jury instruction issues fail.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/25/2025